UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

Civil Action No. 14-128-HRW

DIVERSICARE LEASING CORP. d/b/a
BOYD NURSING & REHABILITATION CENTER;
OMEGA HEALTHCARE INVESTORS, INC.;
DIVERSICARE HEALTHCARE SERVICES, INC;
and DIVERSICARE MANAGEMENT SERVICES CO.          PLAINTIFFS


v.                    MEMORANDUM OPINION AND ORDER


LARRY STROTHER,
Executor of the
ESTATE OF MILES STROTHER,                    DEFENDANT


        This matter is before the Court upon Defendant's Motion to Dismiss [Docket No. 5] and

Plaintiffs' Motion to Compel Arbitration and Enjoin Defendant [Docket No. 7].  The motions

have been fully briefed [Docket Nos. 5-1, 6, 7 and 8].  For the reasons set forth herein, this Court

will overrule Defendant's motion and sustain that of the Plaintiffs.

                                    I.

        Plaintiffs allege that "[o]n or about August 2, 2012, Miles Strother was admitted to Boyd

Nursing & Rehabilitation Center, a nursing home located in Ashland, Kentucky and operated by

Plaintiffs." [Complaint, Docket No. 1, ¶ 12].  As part of the admission process, his son, Larry

Strother, in his capacity as Guardian of Miles Strother, signed an Arbitration Agreement on

behalf of Miles Strother. *Id.*, ¶ 13.  The Arbitration Agreement is attached as Exhibit A to the

Complaint and provides, in pertinent part:

> [A]ny legal dispute, controversy, demand, or claim that arises out
> of or relates to the Resident Admission Agreement or is in any way
> connected to the Resident's stay at the Facility **shall be resolved
> exclusively by binding Arbitration and not by a lawsuit or
> resort to other legal process** . . . . This agreement to arbitrate shall
> include, but is not limited to, any claim for payments, non-
> payment, or refund for services rendered to the Resident by the
> Facility, claims arising out of State or Federal law, claims based
> upon breach of contract, breach of fiduciary duty, violation of
> rights, fraud or misrepresentation, common law or statutory
> negligence, gross negligence, malpractice or any other claim based
> on any departure from accepted standards of medical or nursing
> care, whether such claims be for statutory, compensatory, or
> punitive damages, and whether arising in the future or presently
> existing.

[Docket No. 1-1, p. 1](emphasis added).

The Arbitration Agreement further states:

> This agreement shall inure to the benefit of and be binding upon
> the Parties and their successors and assigns, including the Facility's
> parents, agents, employees, servants, officers, directors,
> shareholders, medical directors, attorneys, insurers, or affiliated
> business entities, and any and all persons whose claim is derived
> from or on behalf of the Resident, including his or her agents,
> **guardian**, power of attorney, parent, spouse, child, executor,
> administrator, legal representative, heirs, trustees, or insurers."

*Id.*, p.2 (emphasis added).

Miles Strother remained a resident at Boyd Nursing & Rehabilitation Center until

December 3, 2013.

On July 22, 2014, Larry Strother, in his capacity as the Executor of the Estate of Miles

Strother, filed in the Circuit Court of Boyd County, Kentucky, Case No. 14-CI-00599, a

negligence, medical negligence, corporate negligence, violation of long term care resident's

rights, and wrongful death action against Diversicare Leasing Corp. d/b/a Boyd Nursing &

2

Rehabilitation Center; Omega Healthcare Investors, Inc.; Diversicare Healthcare Services, Inc.
f/k/a Advocat, Inc.; Diversicare Management Services Company; Cindy Salyers, in her capacity
as Administrator of Boyd Nursing & Rehabilitation Center;; and John Does 1 through 5. [Docket
No. 1-2].

Subsequently, Diveriscare Leasing Corp. d/b/a Boyd Nursing & Rehabilitation Center
filed a Complaint in this Court, as Plaintiffs, alleging federal subject matter jurisdiction by virtue
of diversity and seeking substantially the same relief from this Court regarding arbitration as they
had demanded in State court; to-wit, to find the ADR Clause to be valid and enforceable; to
compel Defendants to arbitrate the State Court claims; and to enter an order enjoining the
Defendants from pursuing their claims in the State Court Action.

Defendant seeks a dismissal of the instant lawsuit.  He contends that this Court lacks
subject-matter jurisdiction; that it should abstain from hearing this action in light of the pending
state-court matter; that the arbitration agreement at issue is invalid and unenforceable; and that
the Court should not exercise its power to enjoin him from continuing the prosecution of his
state-court action.

Plaintiffs seek entry of an Order compelling Defendant to proceed to arbitration and, in
addition, enjoining him from pursing his claims in state court.

## II.

The purpose of a motion to dismiss pursuant to  Fed. R. Civ. P 12(b)(6),  is to allow a
defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief.  *See Mayer v.
Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).  This requires a consideration of and a ruling upon the

merits of a claim. In determining whether dismissal is warranted under Rule 12(b)(6), the complaint must be construed in the light most favorable to the nonmoving party and its allegations taken as true. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). If, in doing so, the Court determines that the case is legally insufficient, it will be dismissed.

The procedure under a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P 12(b)(1) is quite different. At issue in a Rule 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case. In this context, the trial court may proceed as it never could under 12(b)(6) - no presumptive truthfulness attaches to either party's allegations and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover the party claiming jurisdiction will have the burden of proof that jurisdiction does in fact exist. *RMI Titanium Co. v. Westinghouse Electric Corp.*, 78 F.3d 1125, 1134 (6th Cor. 1996)(internal citations omitted).

## III.

### A.     Subject matter jurisdiction exists.

"The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is inflexible and without exception.' " *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884). Federal courts are courts of limited jurisdiction, and subject matter jurisdiction may be obtained only with the existence of diverse parties or a federal question. *Heartwood, Inc. v. Agpaoa*, 628 F.3d 261, 266 (6th Cir.2010); 28 U.S.C. §§ 1331, 1332.

Neither party asserts the existence of a federal question. Rather, the disputed question is that of diversity. 28 U.S.C. § 1332 provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States,"

Defendant has not challenged the allegations in Plaintiffs' Complaint concerning the citizenship of the named Plaintiffs in this action. Indeed, Defendant has already pled in the appurtenant state court action that each of the named Plaintiffs in this action are citizens of another state. Neither has Defendant challenged that the amount in controversy fails to meet the jurisdictional requirements of 28 U.S.C. § 1332. Rather, he contends that complete diversity of citizenship among the parties cannot be established because Cindy Salyers, the nursing home administrator named in his state complaint, but not in the instant matter, is a Kentucky citizen and an indispensable party under Fed.R.Civ.P. 19.  He maintains that her joinder would destroy the complete diversity among parties required by 28 U.S.C. 1332(a)(1).

Yet, this Court and other courts within this District have consistently held that the nursing home administrators are not indispensable per Rule 19.    As the undersigned explained in *GGNCS v. Hanley*, 2014 WL 1333204 (E.D. Ky. 20140, Rule 19 deals with what were historically known as "necessary" and "indispensable" parties. The terms "necessary" and "indispensable" are terms of art in jurisprudence concerning Rule 19, and "necessary" refers to a party who should be joined if feasible, while "indispensable" refers to a party whose participation is so important to the resolution of the case that, if the joinder of the party is not feasible, the suit must be dismissed. If a necessary party cannot be joined without divesting the court of subject-

5

matter jurisdiction, the Rule Provides additional criteria for determining whether that party is indispensable, but if the court finds that the party is anything less than indispensable, the case proceeds without that party, and if, on the other hand, the court finds that the litigation cannot proceed in the party's absence, the court must dismiss the case.

The first step in determining whether Ms. Salyers is  indispensable is to determine whether She is "necessary". A party is deemed necessary under the Rule if:

> (A) in that person's absence, complete relief cannot be accorded among those already parties; or
>
> (B) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may:
>
> (I) as a practical matter, impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed.R.Civ.P. 19.

Defendant's claims against Ms. Salyers and the Plaintiffs in this case are based on the same occurrence, to-wit, the alleged negligence that resulted in injury to his father.  Further, the arbitration agreement governs claims against the corporate parties as well as the administrators. Moreover, if this Court and the state court were to reach different conclusions regarding whether the arbitration agreement is enforceable, Ms. Salyers would face inconsistent procedural remedies. Accordingly, the Court concludes that the administrators are necessary party to the action.

6

However, that is not the end of the inquiry as it pertains to the existence of subject matter jurisdiction in this case. As the joinder of Ms. Salyers would destroy diversity jurisdiction, the Court must also determine whether she is "indispensable." To do so, this Court must balance the following factors: (1) the extent to which a judgment rendered in their absence might prejudice them or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures; (3) whether a judgment rendered in their absence would be adequate; and (4) whether Plaintiffs would have an adequate remedy if the action were dismissed for non-joinder. Fed.R.Civ.P. 19(b).

Defendant argues that he will not be afforded complete relief in the absence of Ms. Salyers in this action. He asserts that he will be unduly and unnecessarily prejudiced by either a grant of jurisdiction by this Court or by being subjected to arbitration with just the named Plaintiffs, and that such a result would result in duplication of proceedings. The Court will address each of these arguments in turn.

First, the duplication of proceedings in these circumstances is not a disqualifying factor. The Sixth Circuit has rejected of this line of argument in a factually similar case addressing joinder: "[T]he possibility of having to proceed simultaneously in both state and federal court," or in two separate arbitrations for that matter, "is a direct result of [Strother's] decision to file a suit naming [Diversicare and Ms. Salyers] in state court rather than to demand arbitration under the [arbitration agreement]." *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 202 (2001). Moreover, "the possibility of piecemeal litigation is a necessary and inevitable consequence of the FAA's policy that strongly favors arbitration." *Id.* The Court considers that there is low risk that the state court

7

will reach an inconsistent outcome regarding the subject arbitration agreement as it relates to any party. Even assuming such risk, however, this is not the degree of prejudice required to conclude an absent party is indispensable. *Id.* at 203. Determining whether the dispute as it relates to Diversicare is subject to arbitration is a simple matter of contract interpretation and does not require Ms. Salyers''s presence or input. *Id.* The prejudice Defendant fears does not present the degree of prejudice necessary to support a conclusion that the administrators are an indispensable party. Furthermore, "[w]here the risk of prejudice is minimal, the Court need not consider how protective provisions in the judgment, the shaping of relief, or other measures might reduce the risk of prejudice." *Id.* at 205.

With regard to the adequacy of available relief, Defendant makes much of the administrator's status as a joint tortfeasor. He implies that this is dispositive of the Rule 19(b) inquiry. The United States Supreme Court has explicitly rejected this theory as a non sequitur. *Temple v. Synthes Corp.*, LTD., 498 U.S. 5, 8, 111 S.Ct. 315, 112 L.Ed.2d 263 (1990) (holding that a party's status as a joint tortfeasor does not make them a necessary or indispensable party but simply a permissive party to an action against one of them),

Finally, Defendant argues that an adequate remedy exists in state court if this Court were to dismiss the case. While that may be true, on balance, the factors do not dictate that the Court find Ms. Salyers indispensable parties. As such, the failure to join her does not warrant dismissal.

The undersigned is not alone in this finding.  In *Sun Healthcare Grp., Inc. v. Dowdy,* 2014 WL 790916 (W.D.Ky., 2014), Judge Russell ruled on a substantially similar Motion to Dismiss by the same Defendant's counsel and found that subject matter jurisdiction existed

8

without the administrator defendants. Judge Russell was persuaded by the "well-reasoned analysis" in an 8th Circuit case and found: "… the makeup of the parties in the underlying controversy is irrelevant for the determination of whether or not diversity jurisdiction exists. The determinative inquiry is the makeup of the parties before this Court. The parties presently before the Court, which does not include the administrators, are diverse. Therefore, this Court has subject-matter jurisdiction on the basis of diversity." *Id.* at *4- *5.                     Similarly, in *GGNSC Louisville Hillcreek, LLC v. Warner,* 2013 WL 6796421 (W.D.Ky., 2013), Judge Heyburn found that subject matter jurisdiction existed even without the administrator defendant. Judge Heyburn analyzed of Rule 19 factors, namely: "(1) the extent to which a judgment rendered in [the administrator's] absence might prejudice [the administrator] or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures; (3) whether a judgment rendered in [the administrator's] absence would be adequate; and (4) whether Golden Gate would have an adequate remedy if the action were dismissed for non-joinder." Id. at *3.  He concluded that the duplication of proceedings is not a disqualifying factor, the risk of prejudice to Defendant was minimal, and an administrator's status as a joint-tortfeasor does not make them an indispensable party. *Id.* at *3-*4.

In this District, in *Brookdale Senior Living, Inc. v. Stacy*, 2014 WL 2807524 (E.D.Ky., 2014), Judge Caldwell analyzed Rule 19 and applied the Sixth Circuit's analysis in *PaineWebber*, as well as other nursing home matters from the district to conclude that "a nursing-home administrator is not an indispensable party when she is joined in the underlying state court action." *Id.* at *6.

9

Judge Reeves' opinion in *Brookdale Senior Living, Inc. v. Caudill*, 2014 WL 3420783 (E.D.Ky., 2014) is consistent. "After balancing the factors of Rule 19(b) and considering the Sixth Circuit's rejection of nearly-identical arguments, the Court finds that the state court administrators are not indispensable parties." *Id.*

Case law is clear from the District Courts of Kentucky, the Sixth Circuit and the Supreme Court that this court has proper subject matter jurisdiction and the parties before the court are properly diverse.

Defendant suggests that the Supreme Court's rationale in *Vaden v. Discover Bank*, 556 U.S. 49, 129 S.Ct. 1262, 173 L.Ed.2d 206 (2009), tips the scales in his favor with regard to jurisdiction, or, more precisely, the lack thereof. In *Vaden*, Discover Bank sued a credit card holder in state court to recover past-due charges. The credit card holder filed a counterclaim, also asserting state-law claims. Yet Discover Bank believed these claims were preempted by federal law, and filed an action in federal district court to compel arbitration of the counterclaims. The Supreme Court held that the district court lacked jurisdiction because the federal issue arose within the context of the state-court counterclaim, and federal courts cannot consider counterclaims when assessing federal question jurisdiction. Accordingly, the Supreme Court directed district courts to "look through" the arbitration action and determine whether federal question jurisdiction exists based on the underlying state-court suit. *Id.* at 62.

Defendant urges that the logic of Vaden applies with equal force in cases resting on diversity jurisdiction. He argues that the Court should "look through" the instant action and determine whether it would have jurisdiction over the state suit, which includes the non-diverse

nursing home administrators. However, this argument was explicitly rejected by Judge Caldwell in *Brookdale*. She noted that the Supreme Court did not include diversity jurisdiction in its holding, despite acknowledging that diversity jurisdiction exists as a separate method for bring a claim pursuant to the Federal Arbitration Act. *Brookdale*, 27 F.Supp.3d at 782.

Accordingly, this Court will decline to "look through" the present action to determine whether it would have diversity over the state-law suit.

Therefore, this Court finds the requirements of diversity jurisdiction have been met and this Court has proper subject matter jurisdiction over this case.

## B.   Abstention is not warranted.

Defendant, alternatively, argues that even if this Court has subject matter jurisdiction, it should abstain from hearing the merits of the case on the basis that there is a parallel suit pending in state court. This district has unequivocally dismissed this argument. *GGNSC Vanceburg, LLC v. Hanley*, 2014 WL 1333204 (E.D.Ky. 2014). *See also, Brookdale Senior Living Inc. v. Stacy*, 27 F.Supp.3d 776 (E.D. Ky. 2014); *Sun Healthcare Group, Inc. v. Dowdy*, 2014 WL 790916 (W.D. Ky. 2014); and *GGNSC Louisville Hillcreek, LLC v. Warner*, 2013 WL 6796241 (W.D.Ky. 2013).

Even where federal courts properly have jurisdiction over the matter, a district court may abstain from exercising its jurisdiction and refrain from hearing a case in limited circumstances, *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 625 (6th Cir.2009). This exception is narrow because a district court presented with a case that arises under its original jurisdiction has a "virtually unflagging obligation" to exercise the jurisdiction conferred upon it by the coordinate branches of government and duly invoked by litigants. *Colorado River Water Conservation Dist.*

11

*v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Abstention is an "extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it." *Id.* at 813.

Under *Colorado River*, the threshold issue is whether there are parallel proceedings in state court. Crawley v. Hamilton County Comm'rs, 744 F.2d 28, 31 (6th Cir.1984). This is not in dispute. Once a court has determined there are parallel proceedings, the Supreme Court identified eight factors that a district court must consider when deciding whether to abstain from exercising its jurisdiction due to the concurrent jurisdiction of state court. *PaineWebber, Inc. v. Cohen*, 276 F.3d at 206. Those factors are: (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction. *Id.*

In this case, as in *Hanley* and the other cases cited herein, only the second and sixth factors favor abstention; the other factors favor federal jurisdiction. However, neither the fact that the state forum would be slightly more convenient to the parties, nor the existence of concurrent jurisdiction is an "exceptional" circumstance necessary to compel this Court to abandon the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817–18 .

Moreover,   "the balance [is to be] heavily weighted in favor of the exercise of

jurisdiction.' *Moses H. Cone*, 460 U.S. 1, 16, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ."

Accordingly, abstention was not warranted.

**C.    Dismissal is not appropriate under Rule 12(b)(6).**

Contrary to Defendant's argument, the arbitration agreement executed by Defendant is valid.  His arguments have been squarely addressed and uniformly rejected by this District.

With regard to Defendant's argument to the contrary, this Court has repeatedly held that it is beyond dispute that the FAA applies to an arbitration agreement executed in connection with admission to a nursing home. *See, e.g., Richmond Health Facilities-Kenwood, LP v. Nichols*, CIV.A. 5:14-141-DCR, 2014 WL 4063823 (E.D. Ky. Aug. 13, 2014); *Brookdale Senior Living, Inc. v. Caudill*, CIV.A. 5:14-098-DCR, 2014 WL 3420783 (E.D. Ky. July 10, 2014); *Brookdale Sr. Living Inc. v. Stacy*, 88 Fed. R. Serv. 3d 1377 (E.D. Ky. June 20, 2014) ("[T]he "general activity" of providing healthcare to Stacy—even if contained to an intrastate market in this individual case—is without a doubt the kind of activity that in the aggregate is subject to federal control under the Commerce Clause."); *Brookdale Senior Living Inc. v. Hibbard*, CIV.A. 5:13-289-KKC, 2014 WL 2548117 (E.D. Ky. June 4, 2014); *GGNSC Vanceburg, LLC v. Hanley*, CIV.A. 13-106-HRW, 2014 WL 1333204 (E.D. Ky. Mar. 28, 2014).

The Court now turns to the question of unconscionability, a doctrine that exists as a narrow exception to the rule that, absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms, *Conseco Finance Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky.App.2001), Under Kentucky law, the doctrine of unconscionability is to be "directed against one-sided,

13

oppressive, and unfairly surprising contracts, and not against the consequences per se of uneven

bargaining power or even a simple old-fashioned bad bargain." Id. ( *citing Louisville Bear Safety*

*Serv., Inc. v. South Central Bell Tel. Co.*, 571 S.W.2d 438, 440 (Ky.App.1978)).  Whether a

contract is substantively unconscionable (i.e., contains terms that are unreasonable or grossly

unfair to one side or another) or procedurally unconscionable (referring to the process by which

the contract is reached) is a fact-intensive inquiry. Here, the facts belie the existence of either

brand of unconscionability.

The agreement in question contains the following features that support its conscionability:

(1) it is a stand-alone agreement; (2) three pages printed in normal font; (3) bold face all capital

letter provision noting the agreement is not a condition of admission to the facility; (4) no

limitation on type or amount of damage claims; (5) no limitation on causes of action; (6) no

suspect forum selection; (7) no truncation of the otherwise applicable statute of limitations; (8)

the terms are such that a person of ordinary experience and education is likely to understand; and

(9) other courts applying Kentucky law have found that arbitration agreements presented as part

of the nursing home admission process were not procedurally unconscionable. *See, e.g., Taulbee,*

*Abell v. Bardstown Medical Investors, Ltd., 2011 WL 2471210*, *1–3 (W.D.Ky. June 20, 2011).

Further, that the arbitration agreement is a "boiler-plate, pre-printed" document does not

render it unconscionable, per se. *See Conseco*, 47 S.W.3d at 342–43 (noting that an arbitration

clause appearing single-spaced on the back of a pre-printed form did not render it procedurally

unconscionable). Defendant has provided the Court no facts to suggest Plaintiffs' representatives

failed to provide him an opportunity to ask questions and understand the terms of the agreement.

14

There is simply nothing to suggest that the arbitration agreement is one-sided, oppressive, unfairly surprising or the result of unfair bargaining.

Moreover, the arbitration agreement is not void against public policy. It is well established that there exists "an emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLP v. Cocchi*, —— U.S. ——,, 132 S.Ct. 23, 25 (2011). The United States Supreme Court specifically rejected an argument that arbitration agreements can be voided for public policy reasons. Marmet *Health Care Center, Inc. v. Brown*, —— U.S. ——, 132 S.Ct. 1201, 1203–4, 182 L.Ed.2d 42 (2012). The high Court held: "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *Id.*

Defendant's attempts to attack the validity of the arbitration agreement are contrary to established law and, as such, fall far short of establishing dismissal pursuant to Rule 12(b)(6).

**D.     This Court may enjoin Defendant from proceeding in state court.**

Having found that Defendant must submit his claims to arbitration, the question turns to whether this Court should enjoin the defendant from pursuing his parallel action in state court. The Court finds that such an injunction is necessary, and the defendant is enjoined from proceeding with her state-court action. "Although the FAA requires courts to stay their own proceedings where the issues to be litigated are subject to an agreement to arbitrate, it does not specifically authorize federal courts to stay proceedings pending in state courts." *Great Earth Companies, Inv. v. Simmons*, 288 F.3d 878, 893 (6th Cir. 2002) (internal citations omitted). For this reason, "the district court's authority to enjoin state-court proceedings is subject to the legal

15

and equitable standards for injunctions generally, including the Anti Injunction Act." *Id.* Pursuant

to the Anti–Injunction Act, "[a] court of the United States may not grant an injunction to stay

proceedings in a State court except as expressly authorized by Act of Congress, or where

necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

An injunction in this case "properly falls within the exception for injunctions 'necessary to

protect or effectuate [this Court's] judgments.' " *Great Earth*, 288 F.3d at 894. The Court has

determined that the parties entered into a binding arbitration agreement covering the scope of

Defendant's claims. Having made such a determination and compelling him to submit to

arbitration, it is necessary to enjoin Defendant from pursing his claims in any alternative forum,

including state court. Otherwise, he would be permitted to circumvent her arbitration agreement

and in doing so, circumvent this Court's judgment that he be compelled to arbitrate his claims.

Accordingly, the Court will order that Defendant be enjoined from proceeding with his pending

state-court action.

## IV.

A valid and binding arbitration agreement was executed by Larry Strother.  This matter must

be referred to arbitration.

Accordingly, **IT IS HEREBY ORDERED**:

(1)    Defendant's Motion to Dismiss [Docket No. 5] be **OVERRULED**;

(2)     Plaintiffs' Motion to Compel Arbitration and to Enjoin Defendant [Docket No. 7]

be **SUSTAINED**;

(3)    Defendant shall prosecute all of its claims arising out of Miles Strother's

residency at Boyd Nursing & Rehabilitation Center in accordance with the terms

of the arbitration agreement signed by his guardian; and

(4)     This matter is hereby **STAYED** pending any further proceedings to enforce any

award of the arbitrator.

This _17th_ day of April 2015.

Signed By:

*Henry R. Wilholt, Jr.*

**United States District Judge**

17